# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

JUAN RAMON JIMENEZ-PABON,
A# 024-456-131,

    Petitioner,

vs.                                  Case No. 4:20cv272-MW-MAF

WILLIAM BARR, et al.,

    Respondents.
_____/

## REPORT AND RECOMMENDATION

    The pro se Petitioner filed a writ of habeas corpus pursuant to 28 U.S.C. § 2241, ECF No. 1, which was deemed sufficient for service in light of Petitioner's allegations that he is a native and citizen of Cuba who was ordered removed in 1999. *Id.* at 2. After being on supervision for 20 years, Petitioner was taken into custody on November 6, 2019. *Id.* at 3. Petitioner contends that ICE has been unable to remove him and, because "there is no significant likelihood of removal in the reasonably foreseeable future," he seeks release from detention and to be place once again "under ICE supervision." *Id.* at 4.

Respondents filed a response to Petitioner's claims, asserting that the petition should be denied "because the petitioner cannot meet his burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future." ECF No. 8 at 1. It is acknowledged that Petitioner was ordered removed on February 22, 1999, and the order "became final on that date." *Id.* at 3. Respondents point out that Petitioner had been on supervised release awaiting removal, but was convicted of numerous crimes during his supervision. *Id.* In November 2019, Petitioner was taken into custody and has remained in detention since then. *Id.* at 4.

On December 27, 2019, a travel document request was submitted by ICE "to the Government of Cuba via diplomatic note, pursuant to the Implementation Guidelines of the Joint Statement, signed on January 12, 2017, between the governments of the United States and Cuba." ECF No. 8 at 4; *see* ECF No. 8-1. "On March 4, 2020, the Government of Cuba approved via diplomatic note, the repatriation of Petitioner to Cuba." ECF No. 8 at 4. Petitioner was scheduled to be removed on a charter flight on March 27, 2020, but two days prior to the flight, "the Government of Cuba notified ICE via diplomatic note that the scheduled upcoming charter for

March 27, 2020, would need to be postponed until a mutual date" could be agreed upon. *Id.*; *see also* ECF No. 8-1 at ¶7.

Respondents provided the declaration of Deportation Office Ruben Leyva who advised that the Government of Cuba had restricted flights into Cuba in an effort to control the spread of the coronavirus. ECF No. 8-1 at ¶8. The Cuban Government intended to lift flight restrictions on August 1, 2020. *Id.* at ¶9. Thereafter, Respondents advised that ICE would "pursue authorization from Cuba via diplomatic note for an ICE charter flight, to include Petitioner." *Id.* at ¶10. Officer Leyva stated his opinion that "there is a significant likelihood of Petitioner's removal to Cuba in the reasonably foreseeable future as flight repatriations are expected to resume once flight restrictions are lifted." Id. at ¶11.

Petitioner filed a reply, ECF No. 10, in which he argued that it "is unclear when" flights will resume to Cuba. *Id.* at 1-2. Petitioner also states that it "has become cruel and unusual punishment" to keep him detained and his life is in danger of "contracting Covid-19 while detained." *Id.* at 2. Petitioner seeks release on supervision until such time as "he may actually be removed." *Id.* at 2.

Petitioner also recently filed a motion for appointment of counsel. ECF No. 11. Within that motion, Petitioner asserts that "Cuba will not accept him nor will it in the near future." *Id.* at 2. Petitioner contends he is not a flight risk, has never missed court dates or tried to escape. *Id.* Plaintiff states he is not a danger to the community and would "do anything ICE asks [of] him" if released. *Id.* He points out that this is his third time "in ICE custody" and he contends he "remains indefinitely detained in ICE custody." *Id.* at 2-3. It further is argued that there is "no repatriation agreement" between the United States and Cuba. *Id.* at 4.

**Analysis**

Petitioner is not challenging the final order of removal in this petition. Rather, Petitioner seeks release from detention pursuant to Zadvydas v. Davis, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001). This Court has jurisdiction over such a petition. 28 U.S.C. § 2241.

The Immigration and Naturalization Act ("INA") directs the removal of an alien from the United States after entry of a final order of removal. 8 U.S.C. § 1231(a)(1)(A). In general, the statute provide for a "90 day" removal period during which the alien must be detained. 8 U.S.C. § 1231(a)(2). Another provision authorizes further detention beyond the 90

day removal period if the "alien ordered removed" is "inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal . . . ." 8 U.S.C. § 1231(a)(6).  Nevertheless, the United States Supreme Court held in Zadvydas v. Davis that the INA does not permit the "indefinite detention" of a removable alien.  Zadvydas, 533 U.S. at 689, 121 S. Ct. at 2498.  The Court held that continued detention of aliens beyond the mandated 90-day removal period was permissible under the statute, but only for the "period reasonably necessary to bring about that alien's removal from the United States."  *Id.* at 689, 121 S. Ct. at 2498. The Court concluded that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  *Id.*, at 699, 121 S. Ct. at 2503.  For the sake of uniform administration by the federal courts, the Court held that "the presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months; after that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.'"  Clark v. Martinez, 543 U.S. 371, 125 S.

Ct. 716, 722, 160 L. Ed. 2d 734 (2005) (quoting Zadvydas, 533 U.S. at 701, 121 S. Ct. at 2505).

In Clark v. Martinez, the Court extended its interpretation of 8 U.S.C. § 1231(a)(6) to inadmissible aliens.  The Court found no reason why the period of time reasonably necessary to effect removal would be longer for an inadmissible alien than for a resident alien.  Clark, 543 U.S. at 386, 125 S. Ct. at 727; *see also* Benitez v. Wallis, 402 F.3d 1133, 1135 (11th Cir. 2005).  Thus, the six month presumptively reasonable period of time is the same for both admitted and inadmissible aliens.  Benitez, 402 F.3d at 1135.  If an alien shows he has been held longer than the presumptively reasonable removal period and his removal is not reasonably foreseeable, a § 2241 petition should be granted.  Clark, 543 U.S. at 386-387, 125 S. Ct. at 727; Benitez, 402 F.3d at 1135 (relying on Clark to hold that an inadmissible alien must be released and paroled into the country if he has been detained beyond the six month removal period and his removal is not reasonably foreseeable).

Zadvydas established a burden-shifting analysis for reviewing § 2241 habeas petitions.  After the presumptive six month removal period has expired, an alien must provide "good reason to believe that there is no

significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701, 121 S. Ct. at 2505.  Thereafter, "the Government must respond with evidence sufficient to rebut that showing." *Id.*  Thus, an alien is not entitled to release based on the fact that the post-removal period has expired.  "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."  533 U.S. at 701, 121 S. Ct. at 2505.  "And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."  *Id.* at 701, 121 S. Ct. ay 2505.  "[I]f removal is not reasonably foreseeable," the writ should be granted because continued detention is "unreasonable" and "no longer authorized by statute," and the alien should be released under supervision, subject to custody again "upon a violation of those conditions."  533 U.S. at 699-700, 121 S. Ct. at 2504.[1]

---

[1] The relevant statute provides: "An alien ordered removed who is inadmissible under section 1182 of this title, removable [for violations of nonimmigrant status or entry conditions, violations of criminal laws, or threatening national security] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."  8 U.S.C. § 1231(a)(6) (quoted in Benitez v. Wallis, 402 F.3d 1133, 1134 (11th Cir. 2005)).

Case No. 4:20cv272-MW-MAF

The initial § 2241 petition sufficiently alleged that Petitioner's continued detention was unconstitutional and indefinite because Petitioner has been subject to a removal order for approximately twenty years and the government had been unable to remove him.  ECF No. 1 at 3.  Further, the United States has historically been unable to remove citizens of Cuba back to Cuba.  Thus, the petition presented a prima facie case and Petitioner met his burden under <u>Zadvydas</u> to show that removal was not significantly likely to occur in the reasonably foreseeable future.

Respondents have also met their burden by responding with evidence to rebut the allegations made in the petition.  Respondents have shown that removal to Cuba became possible in January 2017 after the governments of the United States and Cuba signed the Implementation Guidelines of the Joint Statement."  ECF No. 8-1.  Further, Cuba approved Petitioner's repatriation to Cuba and his removal was scheduled to occur in March 2020.  *Id.*  Removal was delayed due to the coronavirus pandemic, but there is no indication on this record that Petitioner's removal is not likely to occur in the foreseeable future.  As of August 2020, travel restrictions were due to be lifted and Petitioner could be rescheduled for a charter flight to Cuba.

A Petitioner's removal does not have to be guaranteed to occur, nor are Respondents required to provide an exact date for the alien's removal. It is enough for the government to show that removal is significantly likely to occur. Here, it appears that Petitioner's removal is significantly likely to occur and another charter flight will be scheduled in the near future. The petition should be denied.

## RECOMMENDATION

It is respectfully **RECOMMENDED** that the petition for issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2241, ECF No. 1, be **DENIED**, the motion for appointment of counsel, ECF No. 11, be **DENIED**, and this case be dismissed.

**IN CHAMBERS** at Tallahassee, Florida, on September 30, 2020.

    S/   Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). **Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.** If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.